# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR JOHNSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.** |
| | : | |
| **JOHN WETZEL, Secretary of the Pennsylvania Department of Corrections (DOC); SHIRLEY MOORE-SMEAL, Executive Deputy Secretary of the DOC; MICHAEL WENEROWICZ, Regional Deputy Secretary of the DOC; BRENDA TRITT, Superintendent SCI Frackville; JAMES MEINTEL, Deputy Superintendent SCI Frackville; ANTHONY KOVALCHIK, Deputy Superintendent SCI Frackville,** | : | **ELECTRONICALLY FILED** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

## COMPLAINT

### Introduction

1.      The plaintiff, Arthur Johnson, has been held in solitary confinement for nearly 36 years without any rational justification, and without being afforded any meaningful process to address his confinement or to rectify the damage it has inflicted on him.  His confinement in small cells for approximately 23 hours a day for more than three decades has harmed his mental and physical health, resulting in permanent damage to him.

2.    The extreme, unusual and cruel conditions of his confinement violate 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution.

3.    Mr. Johnson seeks injunctive, declaratory, and monetary relief to address these violations of his constitutional rights.

## Jurisdiction and Venue

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

5.    This Court is the appropriate venue pursuant to 28 U.S.C. §1391(b)(2), because the events and omissions giving rise to the claims occurred in the Middle District of Pennsylvania.

## Parties

6.    Plaintiff Arthur Johnson is and was at all times relevant to this action a prisoner in the custody of the Pennsylvania Department of Corrections (DOC).  He is currently incarcerated in solitary confinement at the State Correctional Institution (SCI) Frackville.

7.    Defendant John Wetzel is the Secretary of the DOC.  His employment and mailing address is 1920 Technology Parkway, Mechanicsburg, PA 17050-8507. Defendant Wetzel is sued in his individual and official capacity.

8.    Defendant Shirley Moore Smeal is the Executive Deputy Secretary of the DOC.  Her employment and mailing address is 1920 Technology Parkway,

Mechanicsburg, PA 17050-8507.  Defendant Smeal is sued in her individual and official capacity.

9.      Defendant Michael Wenerowicz is the Regional Deputy Secretary of the DOC.  His employment and mailing address is 1920 Technology Parkway, Mechanicsburg, PA 17050-8507.  Defendant Wenerowicz is sued in his individual and official capacity.

10.     Defendant Brenda Tritt is the Superintendent of SCI Frackville.  Her employment and mailing address is 1111 Altamont Boulevard, Frackville, PA 17931-2699.  She is sued in her individual and official capacity.

11.     Defendant James Meintel is the Deputy Superintendent for Facilities Management at SCI Frackville.  His employment and mailing address is 1111 Altamont Boulevard, Frackville, PA 17931-2699.  He is sued in his individual and official capacity.

12.     Defendant Anthony Kovalchik is the Deputy Superintendent for Centralized Services at SCI Frackville.  His employment and mailing address is 1111 Altamont Boulevard, Frackville, PA 17931-2699.  He is sued in his individual and official capacity.

## Statement of Facts

### *Solitary Confinement: History and Conditions*

13.     Mr. Johnson was initially incarcerated in October 1970 for homicide.  He was 18 years old at the time.

14.     At his criminal trial, an expert in psychological testing employed by the Board of Education of Philadelphia testified that Mr. Johnson had scored as a "retarded educable" on IQ tests administered to Mr. Johnson during his childhood and adolescence at ages 8 (score of 70) and 14 (score of 63). *Id.* at 156. In the language of today, Mr. Johnson had an intellectual disability.

15.     On December 22, 1979, Mr. Johnson was removed from the general prison population and placed in solitary confinement at SCI Pittsburgh for allegedly being involved in an escape attempt.  A few hours after being placed in solitary confinement, Plaintiff was shipped to SCI Huntingdon.  Plaintiff remains in solitary confinement to this day, more than **36 years later**.  He is currently held at SCI Frackville.

16.     Mr. Johnson was held in solitary confinement at SCI Huntingdon from December 22, 1979 until sometime in 1985, when he was transferred back to SCI Pittsburgh.

17.     Mr. Johnson was held in solitary confinement at SCI Pittsburgh from 1985 until November 1989.

18.     In November 1989, Mr. Johnson was transferred to the custody of the Federal Bureau of Prisons (BOP) due to a temporary lack of space in DOC facilities.

19.     In April 1990, Mr. Johnson was transferred back to DOC custody, at SCI Graterford and was immediately placed in solitary confinement.  Mr. Johnson remained at SCI Graterford in solitary confinement until 1995.

20.     In 1995, Mr. Johnson was transferred to SCI Greene and again placed in solitary confinement.  Between 1995 and 2004, Mr. Johnson was held in solitary confinement at SCI Greene.

21.     In May 2004, Mr. Johnson was transferred to SCI Rockview.  One month later, in June 2004, he was again transferred to SCI Smithfield, where he was held until January 2005.  He remained in solitary confinement at SCI Rockview and SCI Smithfield.

22.     In January 2005, Mr. Johnson was transferred to SCI Forest, where he remained in solitary confinement until November 2009, when he was transferred to SCI Huntingdon, where he remained for approximately 53 days, still being held in solitary confinement.

23.     In January 2010, Mr. Johnson was transferred to SCI Rockview, where he was held until January 2013.  He remained in solitary confinement his entire time at SCI Rockview.

24.     In January 2013, Mr. Johnson was transferred to SCI Frackville and continued in solitary confinement.  He remains in solitary confinement at SCI Frackville at the present time.

25.     All told, as of the date of this Complaint, Mr. Johnson has spent more than **36 years** in solitary confinement.  This is more than half of Mr. Johnson's 63-year life and virtually the entirety of his time in prison.

26.     During his 36 years in solitary confinement, Mr. Johnson has spent 23 or 24 hours per day alone in his cell, with little or no human interaction or external stimulation of any other sort.

27.     Since 1979, Mr. Johnson's cell has been approximately 7 feet by 12 feet, smaller than many cages used to hold animals at zoos.

28.     While he has been in solitary confinement, Mr. Johnson's cell has been lighted 24-hours per day, with no reprieve during day or night.

29.     For the entirety of his 36 years in solitary confinement, Mr. Johnson has been permitted one hour of time outside, five days of the week, in a fenced-in exercise cage that is slightly larger than his cell, and he is allowed this time only if weather conditions are determined by prison staff to be acceptable.

30.     During his solitary confinement period, Mr. Johnson has never been permitted to enter the exercise cage with another person.

31.     For the past 36 years, Mr. Johnson has not had access to any exercise or recreational equipment.

32.     For the past 36 years, Mr. Johnson has been forced to eat all of his meals alone in his cell.

33.     For the past 36 years, Mr. Johnson has been prohibited from participating in organizational, vocational, or educational activities within the prison.

34.     Each time Mr. Johnson leaves his cell he is forced to undergo a mandatory strip-search.  This includes every time he goes to the exercise cage and to

any medical appointment.  To the best of Plaintiff's recollection, this strip-search

policy has been in effect since sometime in the 1980s.

35.     For the past 36 years, Mr. Johnson has been prohibited from having any

visits with friends or loved ones that involve any physical contact, such as a

handshake or a hug.  All visitations have occurred through a partition.

36.     Aside from incidental contact with prison staff, Mr. Johnson has not

touched another human since 1979.

37.     Since his transfer to SCI Greene in 1995, every cell he has been in has

had a solid steel door with thin windows, which permits at most a highly constricted

view onto the cell-block.

38.     The solid steel door is effective at preventing prisoners from speaking to

one another on the cell-block, increasing the isolation of those in solitary

confinement.

39.     Prisoners in solitary confinement are prohibited from communicating

with other inmates from behind the steel cell door.  Inmates can only hear each other

in the solitary confinement unit when they yell, which is forbidden.  If they violate this

rule, prisoners can be given a misconduct charge and punished with additional time in

solitary confinement.

### *Long-Term Solitary Confinement is a Deprivation of Plaintiff's Basic Human Needs*

40.     Mr. Johnson has been deprived of basic and fundamental human needs

due to his long-term solitary confinement, including, but not limited to, the following:

mental health and environmental stimulation; social interaction; sleep; a reasonable opportunity to exercise; and dignity.

41.     During his time at SCI Greene between 1995 and 2004, Mr. Johnson was told on multiple occasions by then-Superintendent Ben Varner that he would never be released from solitary confinement.  As a consequence, Mr. Johnson formed the reasonable belief that his solitary confinement would be permanent, continuing until he died.

42.     As the duration of his solitary confinement grew longer, Mr. Johnson began experiencing increasing feelings of anxiety, frustration, loneliness, difficulty concentrating, memory loss, and depression.

43.     Mr. Johnson's heightened anxiety, concentration and memory problems, loneliness, and depression have gotten progressively worse each year.

44.     Mr. Johnson suffers from severely heightened anxiety, which he did not experience prior to his solitary confinement, and which has gotten progressively worse each year.

45.     Mr. Johnson experiences ongoing and ever-increasing depression as his period in solitary confinement continues; the monotony of life in solitary confinement causes Mr. Johnson to feel hopeless about his future.

46.     The depression Mr. Johnson experiences makes it challenging for him to perform basic tasks such as concentrating, sleeping, exercising, getting out of bed, reading, and writing.

47.     Mr. Johnson has had increasing difficulty sleeping.  He wakes up frequently throughout the night and has difficulty getting back to sleep.

48.     Mr. Johnson no longer has the capacity to feel empathy for others that he once had; his emotional capacity has been diminished by the prolonged deprivation of human contact and interaction.

49.     Mr. Johnson suffers from severe cognitive impairment that did not affect him prior to his solitary confinement.

50.     Mr. Johnson has increased difficulty concentrating; he has difficulty sustaining thought or focusing on a subject for more than a few minutes.  This problem has gotten worse each year as his solitary confinement has continued.

51.     When reading, Mr. Johnson no longer has the ability to concentrate on the material he is reading.  When writing, Mr. Johnson must write increasingly shorter letters to family and friends, as it has become more difficult for him to concentrate long enough to write letters.

52.     Mr. Johnson has suffered severe damage to his short-term memory capacity.  He struggles to recall acts performed minutes or hours before.

53.     Depression, anxiety, asocial feelings, cognitive impairment, memory loss, and concentration difficulties are well-established adverse reactions to prolonged solitary confinement. Neuroscience has also established that prolonged isolation damages brain function and physically diminishes parts of the brain.

54.     Mr. Johnson may never recover the normal human capacity to have empathy and caring feelings for others; he feels distanced and disassociated from other people.

55.     There are often times when Mr. Johnson goes days without speaking to another person.

56.     By continuing to hold Mr. Johnson in solitary confinement, Defendants are substantially increasing the actual harm to Mr. Johnson with each passing day. The psychologically devastating conditions imposed on Mr. Johnson will continue to exacerbate the rapid deterioration of his mental health.  Even if Mr. Johnson is released from solitary confinement, he will likely struggle with depression for the rest of his life.

57.     Despite the obvious and thoroughly documented risks and harms that result from long-term solitary confinement, mental health staff at SCI Frackville and the other DOC prisons in which Mr. Johnson has been held have never clinically examined Mr. Johnson, or even questioned him, regarding the psychological, emotional, or cognitive impact that his long-term solitary confinement has had and continues to have on him.

58.     Solitary confinement of such a prolonged duration also places Mr. Johnson at risk of substantial harm to his physical health due to the extraordinary restrictions on his mobility and ability to exercise, the effect that his solitary-induced

depression has on his motivation and ability to sleep, and the extreme stress placed on him by his conditions of confinement.

*Restricted Release List and Lack of Meaningful Review*

59.     In 2003 or 2004, the DOC created something called the Restricted Release List (RRL).  Prisoners placed on the RRL are held in indefinite, potentially permanent, solitary confinement.

60.     RRL prisoners are not permitted to re-enter the general population without the express authorization of the Secretary of the DOC.

61.     Mr. Johnson was placed on the RRL in 2004.

62.     The sole decision-maker regarding whether to keep a prisoner on the RRL in solitary confinement is the Secretary of the DOC.

63.     In October 2012, DOC policy was changed to mandate an annual review of RRL prisoners' solitary confinement by the Secretary of the DOC.

64.     The review process for RRL prisoners involves the circulation of a vote sheet.  Select staff members and officials at the prison vote on whether or not to recommend a prisoner for removal from the RRL.  The process and standards for recommending removal are opaque.

65.     The RRL vote sheet is sent from the prison where the RRL prisoner is held to the DOC Central Office, where the Regional Deputy Secretary and Executive Deputy Secretary also provide recommendations.  As with the process at prisons, the process and standards for recommending removal are opaque.

66.     After all recommendations are provided to the Secretary of the DOC, the Secretary decides on whether to continue holding the prisoner in solitary confinement on the RRL.  Again, the standards and process for decision-making are unknown and seemingly arbitrary.

67.     The entire RRL vote sheet process is done without any input from the prisoner, and the prisoner is never provided with information regarding the recommendations of any of the staff members or officials, or the reasons for such recommendations.

68.     Prisoners on the RRL are not provided any substantive information regarding the basis for any decision made by the DOC Secretary.

69.     Johnson is seen by the Program Review Committee (PRC) for a hearing every 90 days—the only opportunity that Mr. Johnson is afforded to speak regarding his solitary confinement.  However, the PRC only addresses issues that Mr. Johnson may be having in solitary confinement, but not the appropriateness or justification for his continued solitary confinement.

70.     Pursuant to DOC policies, the PRC has no authority to release a prisoner held on the RRL from solitary confinement.  Accordingly, the PRC does not engage in a review of the appropriateness of keeping RRL prisoners in solitary confinement.

71.     On information and belief, the PRC does not assess whether Mr. Johnson remains a security risk.

72.     Prison officials have told Mr. Johnson that he will remain in solitary confinement based solely on his past disciplinary record in prison, referring only to allegations and incidents that are at least 28 years old.  Prison officials' references to Mr. Johnson's decades-old disciplinary record are always vague and lacking in any specificity regarding the incidents being referred to or how these incidents justify continuing his solitary confinement today.

73.     In June 2015, then-Deputy Miller told Johnson at a PRC hearing that he did not think Mr. Johnson could make it in the general population because he has been in solitary confinement too long.  This "Catch 22" situation shows the futility of Mr. Johnson's situation; according to prison officials he has been held in solitary confinement for so long that he now must be held there permanently.

74.     Although prison officials at SCI Frackville have told Mr. Johnson that he will remain in solitary confinement permanently due to his past disciplinary record, the sole decision-maker in the matter, Defendant Wetzel, has never communicated any reason to Johnson as to why he remains in solitary confinement.

75.     Defendants do not afford Mr. Johnson, or any other qualified person or medical professional, any meaningful opportunity to weigh in on the continued appropriateness of his solitary confinement or his desire and ability to re-enter the general population.

76.     Mr. Johnson has not been accused of any serious disciplinary infraction in over 25 years.

77.     On information and belief, nothing that Mr. Johnson says at PRC hearings is transmitted to the sole decision-maker on his solitary confinement status, Defendant Wetzel.

78.     DOC policy does not provide a prisoner on the RRL any opportunity to challenge his solitary confinement by providing information or input to the decision-maker.

79.     Mr. Johnson has never been provided with any written or other substantive explanation of the basis for the decision to keep him in solitary confinement.

80.     Defendants have never told Mr. Johnson what is required of him in order to be released to the general population.

*Roles of the Defendants in Continuing Johnson's Solitary Confinement*

81.     Defendants are aware of the harms and risks caused by long-term solitary confinement.

82.     More than 36 years of being forced to live in a very small concrete and steel area, in complete isolation, results in physical and psychological harm that are obvious to any person, including the Defendants.

83.     Defendants are aware that Mr. Johnson is being deprived of his basic human needs for mental and physical health, environmental stimulation, social interaction, exercise, sleep, and dignity on account of his long-term solitary confinement.

84.     Defendants have articulated no valid basis for Mr. Johnson's solitary confinement.

85.     Defendants are aware that there is no contemporary, valid basis for Mr. Johnson's solitary confinement.

86.     Defendant Wetzel is the Secretary of the DOC, its highest-ranking DOC official.  As such he is the only official with the authority to remove Mr. Johnson from the RRL and to authorize his release into the general prison population.

87.     Defendant Wetzel has made numerous decisions to retain Mr. Johnson in solitary confinement.

88.     Defendant Wetzel is aware of the risks and harms associated with long-term solitary confinement.  These risks and harms are known and understood by prison officials.

89.     Defendant Wetzel has not taken any measures to release Mr. Johnson from solitary confinement.

90.     Defendant Wetzel has not informed Mr. Johnson as to the basis for his continuing solitary confinement.

91.     Defendant Wetzel has not informed Mr. Johnson what he must do in order to be released from solitary confinement.

92.     Defendant Wetzel has made no effort to seek input from Mr. Johnson, qualified medical professionals, or any other party regarding his solitary confinement.

93.     Defendant Smeal is the Executive Deputy Secretary of the DOC.  She makes a recommendation as to whether Mr. Johnson should be released to the general population or remain in solitary confinement.

94.     Defendant Smeal is aware of the risks and harms associated with long-term solitary confinement.  These risks and harms are known and understood by prison officials.

95.     Defendant Smeal has not taken any measures to release Mr. Johnson from solitary confinement, or to recommend his release.

96.     Defendant Smeal has not informed Mr. Johnson as to the basis for his continuing solitary confinement, nor of the basis for her own recommendations.

97.     Defendant Smeal has not informed Mr. Johnson what he must do in order to be released from solitary confinement.

98.     Defendant Smeal has made no effort to seek input from Mr. Johnson, qualified medical professionals, or any other qualified person regarding his solitary confinement.

99.     Defendant Wenerowicz is the Regional Deputy Secretary of the DOC for the Eastern Region.  He makes a recommendation as to whether Mr. Johnson should be released to the general population or remain in solitary confinement.

100.    Defendant Wenerowicz is aware of the risks and harms associated with long-term solitary confinement.  These risks and harms are known and understood by prison officials.

101.    Defendant Wenerowicz has not taken any measures to release Mr. Johnson from solitary confinement, or to recommend his release.

102.    Defendant Wenerowicz has not informed Mr. Johnson as to the basis for his continuing solitary confinement, nor of the basis for his own recommendations.

103.    Defendant Wenerowicz has not informed Mr. Johnson what he must do in order to be released from solitary confinement.

104.    Defendant Wenerowicz has made no effort to seek input from Mr. Johnson, qualified medical professionals, or any other qualified person regarding his solitary confinement.

105.    Defendant Tritt is the Superintendent of SCI Frackville.  She makes a recommendation as to whether Mr. Johnson should be released to the general population or remain in solitary confinement.  She is also responsible for the operation of SCI Frackville.

106.    Defendant Tritt is aware of the risks and harms associated with long-term solitary confinement.  These risks and harms are known and understood by prison officials.

107.    Defendant Tritt has not taken any measures to release Mr. Johnson from solitary confinement, or to recommend his release.

108.    Defendant Tritt has not informed Mr. Johnson as to the basis for his continuing solitary confinement, nor of the basis for her own recommendations.

109.    Defendant Tritt has not informed Mr. Johnson what he must do in order to be released from solitary confinement.

110.    Defendant Tritt has made no effort to seek input from Mr. Johnson, qualified medical professionals, or any other qualified person regarding his solitary confinement.

111.    On those occasions in which Defendant Tritt has spoken with Mr. Johnson, she has been dismissive of his requests to be released from solitary confinement, refusing to consider or discuss the matter.

112.    Defendant Meintel is the Deputy Superintendent for Facilities Management at SCI Frackville. He makes a recommendation as to whether Mr. Johnson should be released to the general population or remain in solitary confinement.

113.    Defendant Meintel is also a member of the Program Review Committee.

114.    Defendant Meintel is aware of the risks and harms associated with long-term solitary confinement.  These risks and harms are known and understood by prison officials.

115.    Defendant Meintel has not taken any measures to release Mr. Johnson from solitary confinement, or to recommend his release.

116.    Defendant Meintel has not informed Mr. Johnson as to the basis for his continuing solitary confinement, nor of the basis for his own recommendations.

117.    Defendant Meintel has not informed Mr. Johnson what he must do in order to be released from solitary confinement.

118.    Defendant Meintel has made no effort to seek input from Mr. Johnson, qualified medical professionals, or any other qualified person regarding his solitary confinement.

119.    On those occasions in which Defendant Meintel has spoken with Mr. Johnson, he has been dismissive of his requests to be released from solitary confinement, refusing to consider or discuss the matter.

120.    Defendant Kovalchik is the Deputy Superintendent for Centralized Services at SCI Frackville. He makes a recommendation as to whether Mr. Johnson should be released to the general population or remain in solitary confinement.

121.    Defendant Kovalchik is also a member of the Program Review Committee.

122.    Defendant Kovalchik is aware of the risks and harms associated with long-term solitary confinement.  These risks and harms are known and understood by prison officials.

123.    Defendant Kovalchik has not taken any measures to release Mr. Johnson from solitary confinement, or to recommend his release.

124.    Defendant Kovalchik has not informed Mr. Johnson as to the basis for his continuing solitary confinement, nor of the basis for his own recommendations.

125.    Defendant Kovalchik has not informed Mr. Johnson what he must do in order to be released from solitary confinement.

126.    Defendant Kovalchik has made no effort to seek input from Mr. Johnson, qualified medical professionals, or any other qualified person regarding his solitary confinement.

127.    On those occasions in which Defendant Kovalchik has spoken with Mr. Johnson, he has been dismissive of his requests to be released from solitary confinement, refusing to consider or discuss the matter.

<em>Exhaustion of Administrative Remedies</em>

128.    Under the DOC's Administrative Custody policy DC-802, "[a]ll issues concerning an inmate's placement in AC custody or the duration, conditions or other circumstances of his/her AC custody must be addressed through the procedures set forth in this directive and may not be addressed through the procedures set forth in Department policy DC-ADM 801, 'Inmate Discipline' or DC-ADM 804, 'Inmate Grievance System.'"  The DC-802 further provides that all issues must be addressed at PRC hearings, and that appeals regarding these issues must be filed to the Superintendent within two days after the hearing.  Once the Superintendent replies, a prisoner must appeal to Central Office if he or she is dissatisfied with the response.

129.    Prisoners on the Restricted Release List, such as Plaintiff, are held pursuant to the DC-802 Administrative Custody policy and are considered Administrative Custody RHU prisoners.

130.   In January 2014, Mr. Johnson appealed his solitary confinement following a PRC hearing. Superintendent Tritt denied his appeal.

131.   When Mr. Johnson appealed this denial to Central Office he was told by Chief Hearing Examiner Robin Lewis that "appeal of placement on the Restricted Release List is not permitted."

132.   On June 26, 2014, Mr. Johnson was seen by the PRC again.  On that same day he appealed the PRC's continuance of his solitary confinement to Superintendent Tritt.  After receiving no response to his appeal, Mr. Johnson submitted a request slip asking for a response.  This was not responded to either, so Mr. Johnson filed a grievance over the matter on August 4, 2014.

133.   On September 19, 2014, following a PRC hearing Mr. Johnson submitted an appeal to Superintendent Tritt of his continued solitary confinement pursuant to the applicable DC-ADM 802 policy.

134.   Mr. Johnson's September 2014 appeal did not receive a response from Superintendent Tritt.

135.   On August 27, 2015, following a PRC hearing, Mr. Johnson again appealed his solitary confinement status in accordance with the DC-ADM 802 policy. Superintendent Tritt rejected his appeal, stating that Central Office had not yet determined whether he would continue in solitary confinement.

136.   Mr. Johnson appealed this decision to Central Office and was again informed that "appeal of placement on the Restricted Release List is not permitted."

137.    Despite repeated attempts to appeal his solitary confinement according to DOC policy, prison officials have refused to respond, and on two occasions he has been informed by the highest administrative authority in the DOC that there is no administrative remedy that will be made available to those on the RRL.

138.    For the foregoing reasons, Mr. Johnson has satisfied the requirement that he exhaust all available administrative remedies.

## CAUSES OF ACTION

### COUNT I.

### Violation of the Eighth Amendment to the U.S. Constitution -- Against All Defendants

139.    Plaintiff re-alleges paragraphs ## as if fully stated herein.

140.    Each Defendant, individually and collectively, has violated Mr. Johnson's right under the Eighth and Fourteenth Amendments to the U.S. Constitution to be free from cruel and unusual punishment by acts and omissions manifesting a deliberate indifference to the deprivation of Mr. Johnson's basic human needs for physical health, mental health, environmental stimulation, social interaction, exercise, sleep, and basic human dignity.

141.    All Defendants have violated Mr. Johnson's right under the Eighth and Fourteenth Amendments to the U.S. Constitution to be free from cruel and unusual punishment by keeping Mr. Johnson in conditions of solitary confinement that cause

severe pain without penological purpose, and which are grossly disproportionate to any purported governmental interest.

142.   All Defendants have violated Mr. Johnson's right under the Eighth and Fourteenth Amendments to the U.S. Constitution to be free from cruel and unusual punishment by keeping Mr. Johnson in solitary confinement for an extended and unlimited period, and such confinement has caused, and continues to cause, substantial physical and psychological harm to him.

## COUNT II.

### Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution -- Against All Defendants

143.   Plaintiff re-alleges paragraphs ## as if fully stated herein.

144.   All Defendants have violated Mr. Johnson's right under the due process clause of the Fourteenth Amendment to the U.S. Constitution including, without limitation, by engaging in the following conduct:  failing to provide Mr. Johnson with a meaningful opportunity to challenge his solitary confinement, including providing him information regarding the basis for any decisions regarding the continuation of his solitary confinement; failing to provide Mr. Johnson a meaningful opportunity to be heard in order to challenge his continuing solitary confinement; denying Mr. Johnson any opportunity to provide information to and/or to influence the ultimate decision-maker regarding his continuing solitary confinement; and informing

Mr. Johnson what is required of him in order for him to be released from solitary confinement.

## COUNT III.

### Substantive Due Process Violation -- Against All Defendants

145.    Plaintiff re-alleges paragraphs ## as if fully stated herein.

146.    All Defendants have violated Mr. Johnson's right to substantive due process under the Fourteenth Amendment to the United States Constitution by continuing to hold him in solitary confinement for nearly 36 years without a valid penological or other justification.  Defendants' conduct shocks the conscience and does not have a rational basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.    Declare Defendants' conduct unlawful;

B.    Enjoin and restrain Defendants from incarcerating Mr. Johnson in solitary confinement or other similar conditions and order Mr. Johnson's placement in the general population;

C.    Mandate that Defendants provide Mr. Johnson with proper psychological and mental health services made necessary due to his prolonged solitary confinement;

D.    Award compensatory and punitive damages;

E.    Grant attorneys' fees and costs; and

F.      Such other relief as the Court deems just and proper.

Dated:  May 12,  2016                    Respectfully submitted,


                                         /s/ *Bret Grote*
                                         Bret Grote
                                         Pa. Bar No. 317273
                                         Dustin McDaniel
                                         Pa. Bar No. 314618
                                         Abolitionist Law Center
                                         Telephone: (412) 654-9070
                                         bretgrote@yahoo.com
                                         dsm@abolitionistlawcenter.org

                                         Jules Lobel*
                                         N.Y. Bar No. 1262732
                                         3900 Forbes Avenue
                                         Pittsburgh, PA 15260
                                         Telephone: (412) 648-1375
                                         jll4@pitt.edu

                                         Thomas S. Jones*
                                         Pa. Bar No. 71636
                                         JONES DAY
                                         500 Grant Street, Ste. 4500
                                         Pittsburgh, PA 15219
                                         Telephone: (412) 391-3939
                                         Facsimile: (412) 394-7959
                                         tsjones@jonesday.com

                                         Peter D. Laun*
                                         Pa. Bar No. 67325
                                         JONES DAY
                                         500 Grant Street, Ste. 4500
                                         Pittsburgh, PA 15219
                                         Telephone: (412) 391-3939
                                         Facsimile: (412) 394-7959
                                         pdlaun@jonesday.com

Tarah E. Ackerman*
Pa. Bar No. 311411
JONES DAY
500 Grant Street, Ste. 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
tackerman@jonesday.com

*Applying for admission pro hac vice

Attorneys for Plaintiff Arthur Johnson.