IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR JOHNSON,** | : | CIVIL ACTION NO. 1:16-CV-863 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JOHN WETZEL**, Secretary of | : | |
| the Pennsylvania Department of | : | |
| Corrections, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Arthur Johnson ("Johnson") brings the above-captioned civil rights action pursuant to 42 U.S.C. § 1983, asserting claims for violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Johnson's claims arise from his continued placement in solitary confinement. Johnson filed the instant motion (Doc. 39) to compel discovery and to overrule certain evidentiary privileges asserted by defendants. The court will grant in part and defer in part Johnson's discovery motion.

**I.    Factual Background & Procedural History**[1]

Johnson has been a prisoner in the custody of the Pennsylvania Department of Corrections ("Department") since 1973. (Doc. 35 ¶ 1). According to Department records, Johnson was involved in a violent escape attempt at the State Correctional Institution ("SCI") at Pittsburgh, Pennsylvania, on December 22, 1979. (See id. ¶ 6). Department records also reflect that Johnson was accused of a second escape

---

[1] The limited factual background set forth herein derives from the parties' joint factual stipulation (Doc. 35), submitted in advance of an evidentiary hearing convened on July 6, 2016.

attempt in 1984.  (Id. ¶ 7).  Both attempts were unsuccessful.  (Id. ¶¶ 6-7).  With the exception of a fourteen month temporary transfer to federal custody from late 1989 to early 1991 and "very brief periods" attending transports between institutions, Johnson has been continuously held in administrative custody in the Department's Restricted Housing Units ("RHUs") since the 1979 escape attempt.  (See id. ¶ 10).  Johnson has not been issued a misconduct for a major disciplinary infraction in more than two decades.  (Id. ¶ 8).

In approximately 2004, the Department instituted a Restricted Release List ("RRL").  (See id. ¶ 20).  A prisoner placed on the RRL will be "held in the RHU unless and until they are taken off RRL status."  (Id.)  Only defendant John Wetzel ("Secretary Wetzel"), Secretary of the Department ("Secretary"), is authorized to remove a prisoner from the RRL.  (Id. ¶¶ 21, 30).  Johnson was placed on the RRL in 2009 and has remained on the RRL since that time.  (See id. ¶¶ 22, 32).

The Department amended its policy in October 2012 to mandate annual review of RRL designations by the Secretary.  (Id. ¶ 23).  The annual review entails circulation of a form referred to as a "DC-46 vote sheet."  (Id. ¶ 24).  Therein, select staff members and prison officials opine as to whether a particular prisoner should remain on the RRL.  (Id.)  The vote sheet is then forwarded to the Department's Central Office, where both the Regional Deputy Secretary and Executive Deputy Secretary provide additional input concerning the prisoner's continued RRL status. (Id. ¶ 25).  Johnson has an "opportunity to speak about" the RRL designation before the prison's Program Review Committee (the "Review Committee") approximately

every ninety days, (id. ¶¶ 25-26), but the full extent of that opportunity is not yet apparent from the record.  The Review Committee "has no authority to release an inmate" from the RRL, but it may make a recommendation to a prison's facility manager "if it is believed that an inmate on the RRL could be safely released to general population or to a Specialized Housing Unit."  (Id. ¶¶ 27-28).

Commencing in 2013, Johnson's RRL status has been reviewed annually in accordance with Department policy, but Secretary Wetzel has not authorized Johnson's release from the RRL.  (See id. ¶¶ 31-32).  Currently, Johnson is in administrative custody in the RHU at SCI Frackville, Pennsylvania.  (Id. ¶ 1).

Johnson commenced this action with the filing of a three-count complaint (Doc. 1) on May 12, 2016.  Johnson asserts an Eighth Amendment claim for cruel and unusual punishment in Count I, and claims for procedural and substantive due process violations of the Fifth and Fourteenth Amendments in Counts II and III.  Contemporaneous with the filing of his complaint, Johnson moved for preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65.  (Doc. 2).  Only the Eighth Amendment claim is subject to Johnson's Rule 65 motion.  (Doc. 4 at 2 n.1).  The court scheduled a multi-day preliminary injunction hearing to commence on July 6, 2016.  (Docs. 23, 29).

In advance of the preliminary injunction hearing, Johnson's counsel requested that the Department produce any documents defendants intended to use in support of their defense, in addition to:

> Any and all documents that are part of the Restricted
> Release List annual review process described in DC-ADM
> 802 § 2.8 pertaining to Arthur Johnson, including each
> DC-46 Vote Sheet, Annual RRL Review, Removal Request

3

> forms, any security or psychological reports that were part of the review, and any other documents used in making recommendations, decisions, or assessments about Mr. Johnson's RRL status. These reviews were begun in 2012.

(Doc. 40 at 3). Defendants agreed to comply with the request, subject to any applicable privileges. (Id.; Doc. 43 at 2). On July 1, 2016, defendants provided Johnson with numerous documents responsive to his request. (See Doc. 43 at 2). Contemporaneous with their response, defendants determined that a number of documents were subject to certain evidentiary privileges or other protections and accordingly withheld or redacted those documents. (Id.) Defendants provided a privilege log to Johnson's counsel, identifying documents withheld from production as follows:

- Four (4) DC-46 vote sheets, dated September 21, 2012, October 16, 2013, August 28, 2014, and August 20, 2015, on deliberative process privilege and security risk grounds;

- Three (3) RRL annual review sheets, on deliberative process privilege and security risk grounds;

- A memorandum from Senior Policy Analyst Madeline McPherson to Secretary Wetzel ("the McPherson memo"), on deliberative process privilege grounds and security risk grounds;

- An email between the Department's assistant counsel, Jaime Boyd ("Boyd"), and chief counsel, Theron Perez ("Perez"), on deliberative process privilege and attorney work product privilege grounds;

- An "Integrated Case Summary – Classification," on security risk grounds; and

- An "Inmate Query – Separations," on security risk grounds.

(Doc. 43-1). Defendants also produced redacted versions of four annual RRL psychological evaluations, as well as an "RRL Checklist" and a memorandum from

4

Superintendent Michael Barone ("the Barone memo") to the Department's Deputy Secretary, citing both deliberative process privilege and security risks. (See id.; see also Doc. 43 at 3).[2]

The parties brought their dispute to the court's attention during the first day of a two-part preliminary injunction hearing on July 6, 2016. The court instructed Johnson's counsel to file an appropriate motion in advance of the second hearing, scheduled for August 11, 2016. Johnson timely filed the instant motion (Doc. 39) to compel discovery and brief (Doc. 40) in support, and defendants responded with an opposition brief. (Doc. 43). On August 1, 2016, Johnson's counsel advised the court by telephone that no reply brief will be forthcoming. Hence, the motion is ripe for disposition.

## II. Discussion

The parties' discovery dispute is manifold, consisting of privilege invocations and relevance objections, as well as an overarching assertion that the evidence sought by Johnson implicates institutional security concerns. The court will consider these issues *seriatim*.

### A. Deliberative Process Privilege

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery, subject to applicable evidentiary privileges, "that is relevant to any

---

[2] Johnson additionally requested that the Department provide information concerning housing assignments of ten other inmates with escape histories. (See Doc. 40 at 5-6; Doc. 43 at 3-4). The other inmates are: (1) Leslie Kevin Billingsley, CL0124; (2) George Conard, AK6890; (3) Hector Huertas, DZ5597; (4) Norman Johnston, AY8624; (5) Carmen Keller, AJ1890; (6) Malcolm Kysor, AJ1746; (7) Eric Lyons, EX1127; (8) Michael McCloskey, AY9776; (9) Russell Shoats, AF3855; and, (10) Anthony Yang, AS3190. (Doc. 40 at 23 n.1; Doc. 43 at 16 n.1). Defendants object to this request as irrelevant. (See Doc. 40 at 5-6; Doc. 43 at 3-4).

party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). One such privilege is that of deliberative process, which authorizes the government to withhold from production documents which contain "confidential deliberations of law or policymaking, reflecting opinions, recommendations, or advice." Redland Soccer Club, Inc. v. Dep't of the Army of the United States, 55 F.3d 827, 853 (3d Cir. 1995) (quoting In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987)). The purpose of this established privilege is "to prevent injury to the quality of agency decisions." Id. (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975)). The privilege acknowledges that "the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer . . . [if agencies were] forced to operate in a fishbowl." Id. (quoting First E. Corp. v. Mainwaring, 21 F.3d 465, 468 (D.C. Cir. 1994)).

A government agency invoking an executive privilege, including the deliberative process privilege, must follow certain judicial guidelines concerning manner of assertion. See United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980) (citing United States v. Reynolds, 345 U.S. 1, 7-8 (1953)). The Third Circuit Court of Appeals has held that the head of the agency asserting the privilege "must personally review the material" and provide both " 'a specific designation and description of the documents' claimed to be privileged" as well as " 'precise and certain reasons for preserving' the confidentiality of the communications." Id. (quoting Smith v. Fed. Trade Comm'n, 403 F. Supp. 1000, 1016 (D. Del. 1975)). Courts within the Third Circuit routinely hold that claims of deliberative process privilege must be presented by the agency head, typically by way of affidavit, rather

6

than by counsel. See, e.g., Griffin-El v. Beard, No. 06-2719, 2009 WL 1606891, at *4 (E.D. Pa. June 8, 2009); Startzell v. City of Phila., 05-5287, 2006 WL 2945226, at *2 n.5 (E.D. Pa. Oct. 13, 2006); Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996); Smith, 403 F. Supp. at 1016.

Defendants have not submitted an affidavit or other evidence establishing that Secretary Wetzel personally reviewed the allegedly privileged material or the privilege log, nor have they averred that Secretary Wetzel asserts the privilege on behalf of the Department. (See generally Doc. 43). At least one district court within the Third Circuit rejected a deliberative process privilege assertion when there was "no indication. . . that the department heads made the type of personal careful examination which must precede invocation of the privilege." Griffin-El v. Beard, No. 06-2719, 2009 WL 678700, at *5 (E.D. Pa. Mar. 16, 2009) (quoting O'Neill, 619 F.2d at 226). Similar deficiencies in the case at bar, *ceteris paribus*, might counsel a similar fate. See O'Neill, 619 F.2d at 226. Nonetheless, the court is mindful of the emergent status of this litigation, and counsel for Johnson has not objected to the manner of privilege assertion. (See generally Doc. 40). The court will thus proceed to review the merits of defendants' privilege claim.

When the deliberative process privilege is properly asserted, the government bears the initial burden of establishing its applicability. See Redland Soccer Club, 55 F.3d at 853 (citing Schreiber v. Soc'y for Sav. Bancorp, 11 F.3d 217, 221 (D.C. Cir. 1993)); see also Scott v. Bd. of Educ. of City of E. Orange, 219 F.R.D. 333, 336 (D.N.J. 2004). The government must present "more than a bare conclusion or statement that the documents sought are privileged." Redland Soccer Club, 55 F.3d at 854

7

(citing Schreiber, 11 F.3d at 221).  Rather, to sustain its burden, the government must establish that the information contained in the subject documents is both "predecisional" and "deliberative."  Reid v. Cumberland Cnty., 34 F. Supp. 3d 396, 406 (D.N.J. 2013) (citing EEOC v. FAPS, Inc., No. 10-3095, 2012 WL 1656738, at *9 (D.N.J. May 10, 2012)); Griffin-El, 2009 WL 1606891, at *4 (citing Startzell, 2006 WL 2945226, at *2).  Information is "predecisional" when it reflects particular steps taken by the agency in reaching a final decision and "deliberative" when it reveals processes used by the agency in reaching the decision.  Griffin-El, 2009 WL 1606891, at *4 (citing Startzell, 2006 WL 2945226, at *2).  The privilege protects the process of "conceptualizing" but not "the gathering of facts."  Cozen O'Connor v. U.S. Dep't of Treasury, 570 F. Supp. 2d 749, 780 (E.D. Pa. 2008).  Hence, material which is factual only is not protected unless its exposure would compromise the deliberative process itself.  Id.

The deliberative process privilege is not absolute.  Redland Soccer Club, 55 F.3d at 854 (citing Mainwaring, 21 F.3d at 468 n.5; United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993)).  Once the government establishes that the information sought is both predecisional and deliberative, the court must determine whether the interests of the party seeking discovery "outweigh[] the government's interest." Id.  The Third Circuit requires the party moving to compel production to show "a sufficient need for the material in the context of the facts or the nature of the case." Id. (quoting *In re* Grand Jury, 821 F.2d at 959).  Courts consider the following non-exhaustive list of factors in balancing the parties' competing interests: (1) the relevance of the information subject to the privilege; (2) the "availability of other

8

evidence"; (3) the "seriousness" of the claims asserted in the litigation; (4) the government's role in the litigation; and (5) whether overruling the privilege would result in "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." Id. (quoting Mainwaring, 21 F.3d at 468 n.5).

When the propriety of the deliberative process itself is genuinely disputed, the privilege "designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws." Scott, 219 F.R.D. at 337 (quoting Grossman v. Schwarz, 125 F.R.D. 376, 381 (S.D.N.Y. 1989)). Hence, courts often reject assertions of deliberative process privilege in cases wherein the agency's deliberations themselves are the subject of constitutional review. See Griffin-El, 2009 WL 1606891, at *9; Scott, 219 F.R.D. at 337. The deliberative process privilege, like all evidentiary privileges, must be narrowly construed. Redland Soccer Club, 55 F.3d at 856.

As a threshold matter, the court cannot determine at this juncture whether the deliberative process privilege should apply to email correspondence between Boyd and Perez in their capacities as Department counsel. (See Doc. 43 at 11). Defendants generally aver that the email in question "is privileged attorney work product and deliberative process." (Id.) The court cannot test the merits of this assertion on the present record. Consequently, the court will defer resolution of Johnson's motion to compel production of this evidence pending *in camera* review of the subject correspondence.

The predecisional and deliberative nature of the balance of the disputed RRL evidence is manifest from the parties' descriptions thereof. Per Department policy, the DC-46 vote sheets and RRL annual review sheets comprise the collective body of institutional recommendations, observations, and opinions upon which Secretary Wetzel renders annual RRL decisions. (Doc. 43 at 8); see PA. DEP'T OF CORR., NO. DC-ADM 802(2)(D)(8), ADMINISTRATIVE CUSTODY PROCEDURES (2014). Similarly, defendants describe the McPherson memo as a compilation of "McPherson's impressions, suggestions, and recommendations to Wetzel regarding the RRL review process for Johnson in 2015." (Doc. 43 at 10). It cannot be reasonably disputed that such documents are both predecisional and deliberative. The same is true of redacted RRL psychological evaluations, an RRL checklist, and the Barone memo, each of which was provided to Secretary Wetzel to assist in his RRL determinations. (See Doc. 40 at 18-21; Doc. 43 at 14-15).

The court is therefore compelled to determine whether Johnson's need for the disputed evidence overcomes the arguably applicable deliberative process privilege. The weighted balance of the Redland Soccer Club factors dictates an answer in the affirmative. Information about the Department's deliberative process for RRL placement is directly relevant to this litigation—indeed, this evidence represents the *punctum saliens* of Johnson's constitutional claims. Accordingly, the first factor weighs heavily in favor of disclosure. Concerning availability of other evidence, defendants assert that the Secretary's rationale alone is relevant to the RRL determinations and offer that Secretary Wetzel will be available to testify; this contention ignores defendants' own concession that Secretary Wetzel's decision is

informed entirely by the withheld and redacted evidence. Hence, the second factor likewise favors Johnson, as the requested evidence is the best evidence available.

The third factor, the seriousness of this litigation, also weighs in favor of disclosure. Johnson charges defendants with trifold constitutional violations, contending that their actions have caused significant and enduring psychological trauma. (See Doc. 1). Indeed, in analogous civil rights cases, courts have been loath to permit invocation of the deliberative process privilege unless the government's assertion is so compelling as to "overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." Griffin-El, 2009 WL 1606891, at *3 (quoting Crawford v. Dominic, 469 F. Supp. 260, 262 (E.D. Pa. 1979)). Similarly, and as noted *supra*, when the constitutional integrity of the government's deliberative process is called into question, the asserted privilege is accorded little weight. See id. at *9; Scott, 219 F.R.D. at 337 (quoting Grossman, 125 F.R.D. at 381). For this reason, the fourth factor—the nature of the government's role in the litigation—also favors overruling the privilege.

The only factor lending support to defendants' privilege assertion is the fifth, which tasks courts to consider whether the disclosure of internal deliberative information might chill government employees from freely exchanging ideas and opinions critical to institutional administration. See Redland Soccer Club, 55 F.3d at 854. Defendants offer no specific, factual support for this factor; instead, defendants quote selectively from a prior decision of this court and assert broadly that release of the subject documents "would interfere with the [Department's] ability to 'protect institutional safety and to avoid manipulation of the system by

inmates.'" (Doc. 43 at 9 (quoting Mincy v. Chmielewski, No. 1:05-CV-292, 2006 WL 3042968, at *1 (M.D. Pa. Oct. 25, 2006) (Conner, J.))). This court's decision in Mincy does not offer the unqualified privilege that defendants seek; indeed, Mincy is materially distinct in that the privileged information sought by the plaintiff was only peripherally relevant to the essential substance of the litigation. See Mincy, 2006 WL 3042968, at *1-2.

After considering the above factors *in toto*, the court finds that Johnson has overcome the deliberative process privilege to the extent it applies to any RRL-related documents. The court's holding casts no doubt upon the sincerity of defendants' stated concerns regarding the potential chilling effect of disclosure. (See Doc. 43 at 9). Nonetheless, withholding or redacting the very evidence which informs the core of Johnson's constitutional remonstrance would unfairly impede Johnson's ability to fully prosecute his claims. Griffin-El, 2009 WL 1606891, at *11. The court concludes that defendants cannot avail themselves of the deliberative process privilege in this litigation. The court will grant Johnson's motion on this issue.

B. **Relevance Objection**

Johnson requests that the Department provide information concerning the custodial status of ten other inmates who, like Johnson, have an escape history and at one time were designated to the RRL. (See Doc. 40 at 23; Doc. 43 at 16). Johnson argues that the Department's treatment of similarly-situated inmates is discoverable and relevant to whether defendants' stated rationale for Johnson's continued confinement is justifiable. (See Doc. 40 at 24). Defendants object to the

12

request for other inmate information on both security risk and relevance grounds. (See Doc. 43 at 15-18).

As noted *supra*, Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) provides for a broad scope of discovery. As a consequence, courts often—and appropriately—apply liberal treatment to discovery rules. See, e.g., Clemens v. N.Y. Cent. Mut. Fire Ins. Co., 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing Great W. Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994)). Nonetheless, a "valid claim[] of relevance or privilege" operates to restrict a court's otherwise broad discretion under Rule 26(b)(1). McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 192-93 (M.D. Pa. 2011).

The court concludes that the information sought by Johnson is facially relevant to Johnson's constitutional claims and thus is discoverable under Rule 26. Defendants rejoin that Johnson's claims are unique to his situation, such that any measurement of his circumstances against other inmates is inappropriate. It is true that Johnson does not state equal protection or discrimination claims which require a comparative analysis. (See Doc. 1). Nonetheless, defendants' treatment of similarly-situated inmates may bear upon credibility inquiries or otherwise allow Johnson's counsel to test the veracity of the Department's position with respect to Johnson's continued placement on the RRL. Given the broad and liberal discovery philosophy espoused by Rule 26(b)(1), the court finds that this particular evidence is

both relevant and discoverable. The court will grant Johnson's motion to compel evidence regarding the custodial status of similarly-situated inmates.

**C.     Security Risk Assertion**

Defendants alternatively contend that security concerns counsel against disclosure of the RRL documents and information regarding other inmates' housing assignments to Johnson. Defendants also assert that an "Integrated Case Summary – Classification" and "Inmate Query – Separations" must be withheld or produced subject to a confidentiality agreement or protective order on security grounds. According to defendants, the case summary provides a "snapshot overview of the inmate's classification information" and contains "evaluations, assessments and recommendations" by Johnson's evaluators, and the separations document identifies prison staff and other inmates who, for security reasons, "are not to be located within the same institution or incarcerated with the subject inmate." (Doc. 43 at 12). Defendants maintain that disclosure of such documents "could pose a security risk to staff, inmates, and the institution as a whole." (Id. at 12-13).

On this score, the court agrees in principle with defendants. Disclosure of sensitive documents generated by prison personnel may jeopardize institutional security and individual safety of prison staff, and the potential threat posed by such disclosure is a proper consideration for the court. See, e.g., Mearin v. Folino, No. 11-571, 2012 WL 4378184, at *3-7 (W.D. Pa. Sept. 24, 2012); Mincy, 2006 WL 3042968, at *1-2. Nonetheless, given the uniquely probative value of the evidence sought by Johnson, the court and the parties must endeavor to strike a proper balance

between Johnson's right to prosecute his claims and the defendants' interest in institutional safety.

This court has previously authorized disclosure of sensitive but highly relevant prisoner mental health records subject to a "precondition of execution of a confidentiality agreement." Mincy, 2006 WL 3042968, at *2. An alternative option identified by the parties *sub judice* is "an appropriate protective order" which, if necessary, "restrict[s] the disclosure of certain information to . . . counsel alone." Gevas v. McLaughlin, 798 F.3d 475, 486 (7th Cir. 2015). However, the undersigned cannot determine whether either option is necessary or appropriate without an *in camera* inspection of the documents in question and without a statement from the Secretary specifically identifying the nature and source of the institutional threat posed by disclosure. Cf. Mincy, 2006 WL 3042968, at *2.

In light of the above, the court will direct defendants to produce the following documents to the court for *in camera* review:

- Four (4) DC-46 vote sheets, dated September 21, 2012, October 16, 2013, August 28, 2014, and August 20, 2015;

- Three RRL annual review sheets;

- The memorandum from Senior Policy Analyst Madeline McPherson to John Wetzel, Secretary of the Department of Corrections ("Department") dated October 23, 2015;

- The "Integrated Case Summary – Classification";

- The "Inmate Query – Separations";

- The "RRL Checklist";

- Four annual RRL psychological evaluations dated January 13, 2012, August 19, 2013, November 20, 2014, and October 6, 2015; and

- The memorandum from Superintendent Michael Barone to Secretary Wetzel dated August 4, 2009.

Counsel for defendants shall provide the above documents to the court forthwith, as more specifically set forth in the accompanying order of today's date. Defense counsel shall also present to the court a statement by Secretary Wetzel identifying with particularity the nature and source of the threat posed by disclosure of each of the above-referenced documents. The court will thereafter determine whether a confidentiality order or other directive limiting production and disclosure is compelled by institutional security concerns.

## III. Conclusion

The court will grant in part and defer in part Johnson's motion (Doc. 39) to compel discovery. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     August 5, 2016